Filed 6/30/21  P. v. Yuriar CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B306024 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA121893) |
| v. | |
| JOSE GERARDO YURIAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Jose Gerardo Yuriar challenges his conviction for assault with a deadly weapon. His principal argument is that the trial court erred in excluding evidence that the victim and an eyewitness requested a form to apply for an immigration visa available only to victims of certain crimes and certain family members of those victims, and requiring certification from a certifying agency, which includes a prosecutor. Defendant asserted the evidence was relevant to demonstrate the victim's and eyewitness's motive to shade their respective testimony to please the prosecutor. The trial court excluded the evidence under Evidence Code section 352.

We conclude the trial court did not abuse its discretion in excluding the evidence because the inference of motive was weak and the admission of the evidence would have been unduly prejudicial given the prospect of juror bias against undocumented immigrants. We also reject defendant's challenge based on the sufficiency of the evidence to the jury's true finding of the great bodily injury enhancement. Finally, we reject defendant's argument that the trial court erred in instructing the jury that defendant's flight may be evidence of consciousness of guilt. Accordingly, we affirm the judgment.

## BACKGROUND

We set forth here background facts and a general description of the proceedings below. We describe additional facts and proceedings relevant to the issues addressed in our Discussion.

A jury convicted defendant of assault with a deadly weapon and found true a great bodily injury enhancement. (Pen. Code, §§ 245, subd. (a)(1) & 12022.7, subd. (a).) The jury acquitted defendant of two counts of committing criminal threats.

2

Defendant admitted that he suffered a prior conviction for second degree robbery. The trial court found the prior robbery conviction true and that the robbery conviction fell within Penal Code sections 1170.12; 667, subdivision (a); and 667, subdivision (b). The trial court sentenced defendant to prison for nine years, which included three years for the great bodily injury enhancement.

On August 28, 2019, defendant approached the truck where Estrada and his father Mendez, were sleeping.[1] The truck was parked in Whittier Narrows Park. Defendant asked for assistance to repair his bike, which had a flat tire. Defendant startled Mendez, who asked defendant to leave. Defendant did not leave. When Estrada awoke, he exited the truck, and an altercation between defendant and Estrada ensued.

It is undisputed that defendant used a Leatherman multitool, similar to a pocket knife, to cut Estrada's left cheek. Defendant testified, "I swung and I skinned his cheek." It is also undisputed that Estrada hit defendant with a metal pipe. Estrada required stitches to repair the wound on his cheek from defendant's Leatherman tool. A bystander, Acosta, called 911 and Deputy Sheriff Abel Morales responded to the call.[2] A search of defendant and the location where the incident occurred did not produce defendant's Leatherman tool.

---

[1] We refer to the victim and eyewitnesses (Estrada, Mendez & Acosta) by their last names only for their protection. (See Cal. Rules of Court, rule 8.90(b)(4) & (b)(10).) We intend no disrespect.

[2] According to Estrada, Morales arrived about five minutes after defendant left the scene. According to Acosta, it took 15 to 20 minutes for the deputy sheriff to arrive.

The vigorously disputed issue was whether Estrada or defendant started the physical altercation. Estrada testified he did not try to punch, kick, or hit defendant before defendant cut his cheek with a knife. Estrada hit defendant with a metal pipe only when defendant raised his arm to hit Estrada in the face. Estrada acknowledged hitting defendant twice with the metal pipe.[3] Estrada's father, Mendez, testified that defendant tried to punch Estrada and Estrada returned the punches. Mendez further testified that defendant then retrieved a knife and cut Estrada's left cheek. Defendant swung the knife multiple times at Estrada before Estrada took a metal pipe from the truck and hit defendant on the arm with the pipe. Acosta, the eyewitness, testified that he saw defendant hit Estrada and saw defendant stab Estrada. Acosta stated that he did not see Estrada try to hit defendant. Acosta also acknowledged that he did not observe the entire incident because he was checking his phone.

In contrast, defendant testified that within two minutes of exiting the truck where he had been sleeping, Estrada took a metal pipe from the back of the truck. According to defendant, defendant did not retrieve his Leatherman multitool until after Estrada hit him twice with the metal pipe. Defendant elaborated that Estrada hurt him by hitting him with the pipe, causing defendant's arms to swell and defendant to lose feeling in his hands. Defendant testified that peace officers were unable to handcuff him after the incident because of the swelling in his arms. Defendant further testified that he received four or five stitches in his arm as a result of the altercation with Estrada. A defense investigator testified that in a pretrial interview, Acosta

---

[3] Estrada testified consistently at the preliminary hearing.

4

reported Estrada swung a metal pipe at defendant several times and hit defendant with it twice.

There also was disputed testimony as to whether defendant threatened to kill Estrada and Mendez.

The trial court instructed the jury on self-defense. Defense counsel argued that defendant acted in self-defense.

## DISCUSSION

1. ***Defendant Does Not Demonstrate the Trial Court Abused Its Discretion in Excluding Evidence that Acosta and Estrada Asked for the Form to Apply for a U-Visa***

Relying on Evidence Code section 352, the trial court rejected defendant's request to cross-examine Acosta and Estrada on their request to the prosecutor for a form to apply for a U-Visa, a type of visa we describe below. On appeal, defendant contends the trial court erred in excluding this evidence: "[T]he evidence was relevant and probative of both Acosta's and [Estrada]'s bias, motive to testify, and motive to exaggerate . . . the incident and benefit the prosecution." Defendant adds that Estrada and Acosta "had a bias in that they had a legitimate stake in the outcome of the trial; they were seeking legal status in this country under the U-VISA program." Defendant further argues the trial court's ruling denied him his right to present a defense, due process, and a fair trial.

The Attorney General counters with the trial court's discretion under Evidence Code section 352 to "exclude evidence that is of marginal impeachment value if it would result in an undue consumption of time, confuse the issues, or create a substantial danger of undue prejudice." The Attorney General

5

argues the trial court did not abuse that discretion given the "limited probative value" of the evidence, the prejudice resulting from informing the jury that Estrada and Acosta were undocumented immigrants; and the undue consumption of time required to explain complex immigration laws and processes. Finally, the Attorney General argues defendant does not have a constitutional right to admit evidence of limited probative value.

We begin with additional factual background and then turn to the parties' arguments. We conclude defendant demonstrates no evidentiary or constitutional error.

### a.    Additional facts

In their trial brief, the People asked the trial court pursuant to Evidence Code section 352, to exclude any evidence of Acosta's and Estrada's request for a U-Visa application form (Form I-918). The People reported that on January 16, 2020, approximately three months after Estrada testified at the preliminary hearing, Acosta approached the prosecuting attorney outside the courtroom on the day the case was set for trial. Acosta asked the prosecutor for the U-Visa application paperwork. Estrada overheard Acosta's request and also requested the paperwork.

When Acosta and Estrada requested the application, the prosecutor "advised Mr. Acosta that [he] did not think he [Acosta] was eligible as he was not a victim" but that Estrada might be eligible. The prosecutor told Estrada and Acosta that they could submit the forms to the prosecutor for certification but he "could not guarantee" certification because "there are very strict requirements and not all people or all cases qualify." The prosecutor thereafter mailed the U-Visa application forms to

6

Acosta and Estrada. As of January 21, 2020, the prosecutor had not received an application from either of them.

In a motion in limine, defendant sought permission to cross-examine Estrada and Acosta on their request for the U-Visa application form. Defendant claimed the evidence was relevant as to "Acosta's and Mendez's bias, motive to testify, and motive to exaggerate both the incident and benefit the prosecution." Defendant added that the evidence was essential to evaluating credibility: "The fact that the witnesses are seeking substantial personal gain from their participation in this case bears on their credibility. Just as the Court would permit cross-examination on an expert witness's fees, it should permit cross-examination on [Mr. Estrada]'s and Mr. Acosta's efforts to obtain immigration benefits from their involvement in this case." Defendant explained that an immigration expert would not be required because the issue was "what benefits [Mr. Estrada] and Mr. [Acosta] believe[d] they may be eligible for . . . ." Defendant relied solely on the prosecutor's statements regarding his conversations with Acosta and Estrada, and did not offer any evidence in support of his argument. Nor did he request an Evidence Code section 402 hearing on the motion to question the two witnesses about the visa.

The trial court excluded cross-examining Acosta and Estrada on their requests for the U-Visa application form. The court reasoned that Estrada had made the request only after he testified under oath at the preliminary hearing and the "issue of U-Visa is highly prejudicial and really not at all relevant. . . . His [Estrada's] testimony is already on the record. There is no evidence it's being influenced by this issue. [¶] Furthermore, some of his testimony is recorded either by photograph or video

7

and he's not the sole witness to the incident. For those reasons under [Evidence Code section] 352 the court would disallow counsel to cross examine him on that issue."[4]

### b. Legal background

"With the enactment of the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), Congress created the 'U' nonimmigrant classification ('U' visa) for victims of certain qualifying criminal activity, including victims of domestic violence, sexual assault, trafficking of aliens, and other crimes. [Citations.] The 'U' visa was intended to provide temporary legal status to such victims who cooperate with officials during investigations and prosecutions." (*Fonseca-Sanchez v. Gonzales* (7th Cir. 2007) 484 F.3d 439, 442, fn. 4.) The U-Visa program allows the "victims of certain crimes . . . to reside lawfully in the United States for a period of four years" and to apply for lawful permanent residency "[o]nce an individual has resided continuously in the United States for three years following the receipt of a U–Visa." (*Romero-Perez v. Commonwealth* (Ky.App. 2016) 492 S.W.3d 902, 906.)

"To obtain a U-Visa the applicant must: (1) 'possess specific facts regarding the criminal activity leading a certifying official to determine that the petitioner has, is, or is likely to

---

[4] Defendant interprets the trial court's ruling as suggesting that defendant delayed in requesting admission of the requests for U-Visa application forms. The record instead suggests that the delay noted by the trial court concerned Estrada's delay in requesting a U-Visa, not defendant's delay in requesting admission of the evidence. In any event, the record shows defendant timely raised the issue.

provide assistance to the investigation or prosecution of the qualifying criminal activity,' [citation], (2) [demonstrate that he or she is] 'being helpful, or is likely to be helpful to a certifying agency in the investigation or prosecution of the qualifying criminal activity upon which his or her petition is based, and since the initiation of cooperation, has not refused or failed to provide information and assistance reasonably requested.' [Citation.]" (*Romero-Perez v. Commonwealth*, *supra*, 492 S.W.3d at p. 906.)  To apply for a U-Visa, a person "must submit[ ] Form I-918." (8 C.F.R. § 214.14(c)(1) (2021).)  Under the applicable federal regulations, a "[v]ictim of qualifying criminal activity generally means an alien who has suffered direct and proximate harm as a result of the commission of qualifying criminal activity." (8 C.F.R. § 214.14(a)(14) (2021).)  Qualifying criminal activity includes "felonious assault." (8 C.F.R. § 214.14(a)(9) (2021).)  Certain family members of the victim may also qualify for a U-Visa. (8 C.F.R. § 214.14(a)(10) (2021).)  To obtain a U-Visa, a "certifying agency" must certify that "the petitioner has been helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim." (8 C.F.R. § 214.14(a)(12) (2021).)  Certifying agency includes a prosecutor.  (8 C.F.R. § 214.14(a)(2) (2021).)

Courts in other states have permitted a criminal defendant who has applied for a U-Visa to cross-examine a victim concerning his or her application.  For example, a Kentucky appellate court concluded:  "One can readily see how the U-Visa program's requirement of 'helpfulness' and 'assistance' by the victim to the prosecution could create an incentive to victims hoping to have their U-Visa's granted." (*Romero-Perez v. Commonwealth*, *supra*, 492 S.W.3d at p. 906.)  "Even if the victim

9

did not outright fabricate the allegations against the defendant, the structure of the program could cause a victim to embellish her testimony in the hopes of being as 'helpful' as possible to the prosecution." (*Ibid*.)

Similarly, an Oregon appellate court held evidence that a victim had applied for a U-Visa is relevant in a criminal prosecution because it has a tendency to support the inference that the victim has an interest in testifying in order to stay in this country legally. (*State v. Valle* (Or.App. 2013) 255 Or.App.805, 814; see also *State v. Del Real-Galvez* (Or.App. 2015) 270 Or.App. 224, 230 [relying on *Valle*].) The South Carolina Supreme Court reached the same conclusion. (*State v. Perez* (2018) 423 S.C. 491, 500 ["a jury could see the U-visa applications as a means of establishing bias"].) Appellate courts have, however, upheld rulings that evidence of a witness's immigration status or involvement with the U-Visa program was inadmissible when there was no evidence that the witness applied or intended to apply for a U-Visa (*State v. Lopez* (N.C.Ct.App. 2020) 852 S.E.2d 658, 660–661), or when a "great length of time" had passed between the victim's report of the crime and the time she filed her U-Visa application (*State v. Buccheri-Bianca* (Ariz.Ct.App. 2013) 312 P.3d 123, 127).

In *People v. Villa* (2020) 55 Cal.App.5th 1042, our colleagues in the Fourth District affirmed a trial court's decision to exclude evidence that a victim had an outstanding application for a U-Visa at the time of trial. (*Id*. at pp. 1047–1048.) At an Evidence Code section 402 hearing, the victim stated that she learned about the U-Visa program after she testified at the preliminary hearing. (*Villa*, at p. 1048.) She completed the U-Visa application and "understood she would have to cooperate

with the prosecution of the case, testify if she was subpoenaed, and testify truthfully." (*Ibid*.) The trial court excluded the evidence under Evidence Code section 352, finding that its probative value was "far outweighed by 'the tendency of that particular item to open up a massive inquiry requiring an undue consumption of court time and tending to confuse issues and invite jury speculation.' " (*Villa*, at p. 1048.)

The appellate court recognized that the victim's "application for a U-Visa was relevant impeachment evidence." (*People v. Villa*, *supra*, 55 Cal.App.5th at p. 1051.) The court also observed that the victim's trial testimony was similar in all material respects to her preliminary hearing testimony during which she was unaware of the U-Visa process. (*Id*. at p. 1052.) The court then balanced the limited probative value of the evidence against the " 'huge chunk of time' " necessary to evaluate the victim's motivation such as whether she changed her story after the preliminary hearing when she learned of the U-Visa program, her beliefs about what the prosecution expected from her, and the status of her application. (*Id*. at p. 1053.) The court affirmed the exclusion of the evidence, explaining that, among other reasons, the evidence could prejudice the jury against the undocumented victim. (*Ibid*.)

### c. The trial court did not abuse its discretion in excluding the evidence under Evidence Code section 352

Turning to the case before us, the parties correctly state that this court reviews a trial court's evidentiary ruling for abuse of discretion. "On appeal, we will uphold a trial judge's exercise of discretion under [Evidence Code] section 352 unless it was exercised in an arbitrary, capricious, or patently absurd manner."

11

(*People v. Villa*, *supra*, 55 Cal.App.5th at p. 1051.) We examine the court's ruling based on the record before the court at the time of its ruling. (*People v. Hartsch* (2010) 49 Cal.4th 472, 491; *People v. Fruits* (2016) 247 Cal.App.4th 188, 208.) " ' "[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 976; see also *People v. Turner* (2020) 10 Cal.5th 786, 807.)

"No evidence is admissible except relevant evidence."[5] (Evid. Code, § 350.) "As a general matter, a defendant is entitled to explore whether a witness has been offered any inducements or expects any benefits for his or her testimony, as such evidence is suggestive of bias." (*People v. Brown* (2003) 31 Cal.4th 518, 544.) Although " '[c]ross-examination to test the credibility of a prosecuting witness in a criminal case should be given wide latitude' [citation], such latitude does not 'prevent the trial court from imposing reasonable limits on defense counsel's inquiry based on concerns about harassment, confusion of the issues, or relevance' [citations]." (*Id.* at p. 545.)

We acknowledge that a witness's desire to obtain a visa could color his testimony and under some circumstances, be compelling evidence of bias outweighing the potential prejudicial effect on the jury of disclosing that the witness may be in the

---

[5] Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

12

United States illegally. Here, however, the evidence to support an inference of bias or motive was very weak.

Estrada's testimony at the preliminary hearing, before he asked for the visa application, did not vary from his testimony at trial, weakening any inference of bias in his testimony at trial. As to Acosta, any discrepancies between his trial testimony and his statements to the police were not revealed until after the court ruled on defendant's motion in limine, and defendant did not renew the motion after Acosta's testimony.[6] Nor is there any evidence that the prosecutor promised or intimated that he would support any future visa application, U-Visa or otherwise. Indeed, the prosecutor discouraged Acosta from applying by telling him he was unlikely to qualify for the visa,[7] and cautioned Acosta and Estrada that he could not guarantee certification because of the strict requirements for obtaining the visa.

On the other hand, the risk of prejudice against the witnesses was apparent. Admitting evidence that Acosta and Estrada had requested U-Visa applications would have risked jurors discrediting their testimony because of anti-immigrant bias. This risk of prejudice was heightened where Estrada appears to have been homeless, living out of a truck. Where the inference of a witness's desire to obtain a U-Visa is strong, the risk of prejudice arising from anti-immigrant bias may be

---

[6] For example, Acosta was not consistent in describing whether defendant stabbed Estrada before or after Estrada procured the pipe. Acosta also was inconsistent in his statements whether Estrada hit defendant with the metal bar.

[7] Acosta was not the victim of an offense or family member of a victim, a requirement for obtaining a U-Visa. (8 C.F.R. § 214.14(a)(14)(i) (2021).)

insufficient to exclude the evidence.  (See, e.g., *Romero-Perez v. Commonwealth*, *supra*, 492 S.W.3d at p. 907 [although "a witness' immigration status could trigger negative sentiments in the minds of some jurors," "a criminal defendant's right to effectively probe into a matter directly bearing on witness credibility and bias must trump any prejudice that would result from the jury's knowledge of the victim's immigration status"].)  Here, however, where the inference of bias had weak support in relation to this prejudice, we see no abuse of discretion in excluding the evidence.

### d.    Defendant demonstrates no constitutional error

Defendant argues that exclusion of the evidence of Estrada's and Acosta's requests for the Form I-918 deprived him of the right to present a complete defense, to confront these witnesses, and of a fair trial in violation of the Fourteenth Amendment.  There are two problems with defendant's arguments.  First, he forfeited them.  Second, they have no merit given the attenuated relevance, if at all, of Acosta's and Estrada's requests for the Form I-918.

Defendant fails to demonstrate he preserved these constitutional arguments.  In his motion in limine, defense counsel argued that the "U-Visa applications" were relevant to credibility and would not require an undue consumption of time.  By failing to raise constitutional issues in the trial court, defendant forfeited them.  "As the United States Supreme Court recognized in *United States v. Olano* [(1993) 507 U.S. 725, 731], ' "[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make

14

timely assertion of the right before a tribunal having jurisdiction to determine it." ' [Citations.] 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]' [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.)

Second, as defendant recognizes, "[f]or a defendant's constitutional rights to override the application of ordinary rules of evidence, the proffered evidence must have more than slight relevancy to the issues presented." "As a general matter, a defendant has no constitutional right to present all relevant evidence in his favor. [Citation.] In other words, ordinary evidentiary rules do not impermissibly infringe on the defendant's right to present a defense. [Citation.] Thus, courts may ordinarily exclude evidence after weighing its probative value against any unfair prejudicial effect. [Citation.] However, there are instances where due process, the right to a fair trial, and other constitutional guarantees trump the rules of evidence. 'For a defendant's constitutional rights to override the application of ordinary rules of evidence, " 'the proffered evidence must have more than "slight-relevancy" to the issues presented. [Citation.] . . . [Citation.] The proffered evidence must be of some competent, substantial and significant value. [Citations.]' [Citation.]" [Citation.]' [Citation.]" (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1019.)

As our preceding discussion demonstrates, admissibility of Estrada's and Acosta's requests for the Form I-918 was at best, based on a very thin inference of bias. We thus fail to discern how defendant's constitutional rights were impinged by the trial court's exclusion of this evidence under Evidence Code section 352.

15

## 2. *Substantial Evidence Supported the Great Bodily Injury Enhancement*

Defendant argues that the jury's true finding regarding the great bodily injury enhancement was not supported by substantial evidence. Defendant argues that a "simple laceration or a simple abrasion[ ] must be accompanied by something more."

### a. Additional facts

Defendant retrieved his Leatherman multitool from his backpack and used it to cut Estrada's face. The cut was two centimeters long and bloody. An ambulance took Estrada to the hospital where a physician's assistant used seven stitches to close the cut. The physician's assistant used two layers of stitches. The purpose of the lower layer was to connect soft tissue under the skin. The purpose of the upper layer was to connect the skin. A CT scan revealed no fracture. The physician's assistant testified that there was no injury to the internal structures under Estrada's skin. Estrada reported his pain was "7 out of 10."

About a week after the incident, Estrada returned to the hospital to have the stitches removed, and there were no complications. At the sentencing hearing, the trial court noted that Estrada "is scarred."

### b. Legal analysis

Penal Code section 12022.7 provides in pertinent part: "Any person who personally inflicts great bodily injury on any person . . . in the commission of a felony or attempted felony [shall be punished by an additional consecutive term of three years]. [¶] . . . [¶] As used in this section, 'great bodily injury' means a significant or substantial physical injury." (Pen. Code,

§ 12022.7, subds. (a) & (f); see also *People v. Cross* (2008) 45 Cal.4th 58, 63 ["Great bodily injury 'means a significant or substantial physical injury.' [Citations.]" ].)  The injury "need not be so grave as to cause the victim ' "permanent," "prolonged," or "protracted" ' bodily damage." (*Cross*, at p. 64, quoting *People v. Escobar* (1992) 3 Cal.4th 740, 750.)  "Proof that a victim's bodily injury is "great"—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*Cross*, at p. 66.)  Soft tissue injury may qualify as great bodily injury. (*People v. Le* (2006) 137 Cal.App.4th 54, 58–59.)

Whether the harm resulting to the victim constitutes great bodily injury is a question of fact for the jury, whose verdict we must uphold if supported by substantial evidence.  (*People v. Wolcott* (1983) 34 Cal.3d 92, 107.)  " ' "If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' [Citation.]" (*People v. Escobar*, *supra*, 3 Cal.4th at p. 750.)  "Substantial evidence is reasonable, credible and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt." (*People v. Salazar* (1995) 33 Cal.App.4th 341, 346.)

This standard of review is dispositive.  Substantial evidence supported the jury's true finding even if arguendo there was evidence that may have supported a contrary finding. Defendant cut Estrada's face.  Defendant concedes that a laceration can constitute great bodily injury and that great bodily injury does not require permanent disfigurement.  At the time of

the incident, Estrada reported significant pain, which he described as "a 7" on a scale of 10. Treatment required multiple layers of stitches to hold together both the underlying soft tissue and the surface skin, and a return visit to the hospital to remove the stitches. The jury also had a picture of the bloody cut at the time Estrada was in the hospital and saw Estrada's face when he testified. A reasonable jury could have found persuasive the evidence of the depth of the cut and the pain Estrada suffered when it found true that Estrada had suffered great bodily injury.

*People v. Medellin* (2020) 45 Cal.App.5th 519, 523, 529 supports our conclusion. The *Medellin* court held that a cut on a victim's chin that hurt for three days, required three stitches and a second hospital visit to remove them, left a little scar, and loosened a false tooth was sufficient to support a true finding of great bodily injury. (*Ibid*.) The cut on Estrada's face was qualitatively worse than the *Medillin* victim's cut. A fortiori, substantial evidence supported the jury's true finding of great bodily injury.

Contrary to defendant's argument, *People v. Martinez* (1985) 171 Cal.App.3d 727 does not compel a different conclusion. In *Martinez*, the court found the following evidence insufficient to support a great bodily injury enhancement: " 'a minor laceration-type injury in the middle of [the victim's] back' " (*id*. at p. 735). The wound was minor because the victim was wearing two shirts and a heavy coat. (*Ibid*.) Even the prosecutor described the injury as a " 'pinprick' " (*id*. at p. 736); the injury did not require a hospital visit. (*Id*. at p. 735.) Here, Estrada's face was uncovered when defendant cut him, and his wound bled; the laceration required two layers of stitches and two hospital visits. As explained above, the laceration to Estrada's left cheek was more

than minor and caused him measurable pain. Simply put, substantial evidence supported the jury's finding of great bodily injury.

### 3. Defendant Does Not Demonstrate Instructional Error

Over objection, the trial court instructed the jury: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

Defendant argues the trial court erred in giving this instruction because defendant left the area of the incident when Estrada and Mendez asked him to leave. Defendant also asserts that he did not leave the park, but was at the edge of the park when the deputy sheriff arrived.

### a. Additional facts

Deputy Morales located defendant about 200 yards from where he fought with Estrada. Deputy Morales described defendant as "appear[ing] angry and [he] was sweating as he was running away." A search of defendant revealed no weapons.

Defendant testified that he sat down in the park to "wait for the police to come and straighten all this out." Defendant testified, "I didn't leave the area. I was still in the park. I just created distance."

During closing argument, the prosecutor argued, "[T]he defendant leaves the scene, he flees. Again this is another key piece of evidence that supports the defendant was guilty . . . ." The prosecutor argued, "[T]he defendant runs away. Once again

19

this is behavior that's inconsistent with someone who is innocent."

Defense counsel retorted: "[O]ne of the prosecutors' main points in closing argument he tries to make you think my client fled, showing he knew he was guilty. That's a little rich for him to argue that, don't you think? All these guys wanted the whole time was for my client to leave. They were asking him to leave. Then when he does leave the prosecutor tries to use that against him. Tries to say 'Oh he shouldn't have left. That shows he's guilty.' "

### b.    Legal analysis

"A flight instruction is proper whenever evidence of the circumstances of defendant's departure from the crime scene or his usual environs, or of his escape from custody after arrest, logically permits an inference that his movement was motivated by guilty knowledge." (*People v. Turner* (1990) 50 Cal.3d 668, 694.) " ' " '[F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested.' " [Citation.]' [Citation.]" (*People v. Leon* (2015) 61 Cal.4th 569, 607.)

The evidence here permitted the inference that consciousness of guilt motivated defendant's movements. Deputy Morales testified that defendant "was running away." Defendant knew the police were coming because he testified that he was waiting for them. In addition to leaving the scene, defendant at least arguably discarded the weapon he had used to cut Estrada's face. Defendant did not call for assistance even though he knew he had cut Estrada, who was bleeding.

(*People v. Bell* (2020) 48 Cal.App.5th 1, 20 [fact that defendant did not call for help supports giving flight instruction].)

Defendant's argument that the "only rationale inference . . . is that appellant simply left one area of the park and moved to another after the complaining witnesses repeatedly told him to do so" ignores this evidence not supporting his preferred inference. Taking into account all the evidence, defendant demonstrates no error in instructing the jury on flight. (*People v. Bell*, *supra*, 48 Cal.App.5th at p. 20 [flight instruction proper when evidence supports it even if evidence also supports a different inference].)

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.

                                    BENDIX, J.

We concur:

        ROTHSCHILD, P. J.

        CHANEY, J.

21